[No. 53779–8. En Banc. November 25, 1987.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
JOE A. SHOEMAKER, ET AL, *Appellants*, v. THE CITY OF
BREMERTON, ET AL, *Appellees*.

*Karen L. Gilbert, James A. Douglas,* and *Gibbs, Douglas, Theiler & Drachler,* for appellants.

*Ralph C. Pond* and *Lane, Powell, Moss & Miller,* for appellees.

DORE, J.—This federal civil rights case has been certified to this court by the Ninth Circuit Court of Appeals under RCW 2.60.020 for an answer to the following question:

> Does Washington law afford preclusive effect to the factual findings of the Bremerton Civil Service Commission that Joe Shoemaker's reductions in rank were not retaliatory?

The Ninth Circuit considered certification appropriate in this case because the United States Supreme Court recently determined that the preclusive effect of a state administrative decision in a federal civil rights action should be determined under the law of the forum state. *University of Tenn. v. Elliott,* __ U.S. __, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986).

We hold that an administrative determination of fact is entitled to collateral estoppel effect in a subsequent civil suit.

## FACTS

In 1982, Joe A. Shoemaker was deputy chief of police in Bremerton. On March 5, 1982, he gave testimony before the Bremerton Civil Service Commission regarding alleged irregularities in the grading of the department's perform-

ance evaluations. Four days later he was informed that he was to be demoted to the rank of captain. Shoemaker petitioned the Commission for reinstatement to deputy chief, contending that he was demoted in bad faith and not for cause in violation of RCW 41.12.090. A hearing was held on March 19, 1982.

At that hearing, Shoemaker was represented by counsel, who was permitted to give an opening and closing statement, to call witnesses and to cross-examine witnesses. All witnesses were placed under oath. Shoemaker had had the opportunity to examine documents of the department, some of which were introduced at the hearing. Supplemental Clerk's Papers, at 321, 327, 333. Shoemaker's counsel prepared and submitted a hearing memorandum, setting forth his legal argument. Objections were heard and ruled on by the hearing examiners with the assistance of Mary Killian, a Bremerton city attorney. (This arrangement was agreed to by Shoemaker with the advice of counsel. Supplemental Clerk's Papers, at 298. Ms. Killian did not assist in the preparation or presentation of the City's case.)

However, certain other possible procedural safeguards were not present. The hearing examiners were not attorneys. The rules of evidence were not in force. The Commission has not promulgated official rules to govern hearings of this type.

The Commission issued findings of fact and conclusions of law on March 26, 1982, finding that Shoemaker was not relieved of his position in retaliation for his testimony regarding the grading of performance evaluations, that he was relieved of the position of deputy chief as part of a valid reduction in force and that he was not demoted under the strict terms of rule 10, section 3 of the Bremerton Civil Service Commission Rules, because he was not demoted for incapacity, misconduct or other cause.

Following a second demotion from captain to sergeant, Shoemaker requested reconsideration of the Commission's March 26 ruling. The Commission held another hearing and issued findings of fact in December 1982, which again found

that Shoemaker's demotion was not retaliatory, and was a valid reduction in force and was done at the direction of the Mayor.

Following the Commission's decision, Shoemaker appealed to the Superior Court for Kitsap County. He did not, however, pursue this appeal to completion. Instead he took a voluntary dismissal without prejudice when he filed a civil rights action in federal district court pursuant to 42 U.S.C. § 1983.

Judge Dimmick of the federal district court granted summary judgment against Shoemaker on the ground, in part, that the determination by the Commission that his demotion was not retaliatory was binding on the federal court under the doctrine of collateral estoppel. Shoemaker appealed to the Ninth Circuit, which certified the question here.

## ANALYSIS

The general term res judicata encompasses claim preclusion (often itself called res judicata) and issue preclusion, also known as collateral estoppel. Under the former a plaintiff is not allowed to recast his claim under a different theory and sue again. Where a plaintiff's second claim clearly is a new, distinct claim, it is still possible that an individual issue will be precluded in the second action under the doctrine of collateral estoppel or issue preclusion. In an instance of claim preclusion, all issues which might have been raised and determined are precluded. In the case of issue preclusion, only those issues actually litigated and necessarily determined are precluded. *Seattle–First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 228, 588 P.2d 725 (1978).

■ The elements of collateral estoppel have been stated as follows:

(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Malland v. Department of Retirement Sys.,* 103 Wn.2d 484, 489, 694 P.2d 16 (1985); *Rains v. State,* 100 Wn.2d 660, 674 P.2d 165 (1983). In addition, the issue to be precluded must have been actually litigated and necessarily determined in the prior action. *Peterson v. Department of Ecology,* 92 Wn.2d 306, 312, 596 P.2d 285 (1979); *Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976); *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974). *See* Restatement (Second) of Judgments § 27 (1982).

■ Where the prior adjudication took place before an administrative body, collateral estoppel may be proper, depending on other, additional factors. These have been stated as "including" the following:

(1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations.

*State v. Dupard,* 93 Wn.2d 268, 275, 609 P.2d 961 (1980).

The first of these elements is present here. The plain terms of RCW 41.12.040 and .090 give the Commission the power to conduct the inquiry it did and to make the findings necessary to resolve the factual issue Shoemaker presented. Shoemaker argues that the Commission acted beyond its competence because the "City and/or the commission determined Shoemaker was not a classified employee," and had no jurisdiction over his petition. Brief of Appellant, at 10. The record does not disclose that the Commission made any such finding. In addition, Shoemaker argues that the Commission acted beyond its competence because it decided his civil rights claim. While this may be the practical effect of the Commission's decision, in fact it did no such thing. Whether this practical effect renders issue preclusion inappropriate on grounds of public policy is considered below.

The key question in this case is *Dupard's* second factor. Consequently, we must formulate precisely the differences between agency and ordinary adjudication which are relevant in determining the adequacy of agency adjudication for collateral estoppel purposes. The Restatement (Second)

of Judgments § 83 states them as follows:

(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

As the statement of fact indicates, the procedures employed by the Bremerton Civil Service Commission in hearing Shoemaker's claim are sufficient to justify giving preclusive effect to the Commission's decision on the issue of retaliation. The City has submitted the affidavit of Mary Killian, an assistant city attorney who was present at the hearings.[1] Ms. Killian stated:

4. Shoemaker was represented in these hearings by Karen Gilbert, his counsel of record in this case. Ms. Gilbert had the opportunity to cross–examine any of the

---

[1]Shoemaker argues that the affidavit of Killian is "self–serving and unsupported by the record." Reply Brief of Appellant, at 9. However, he has submitted no countering affidavits. A transcript of the first hearing is contained in the record. A substantial portion of the transcript of the second hearing has also been submitted. The transcripts support Ms. Killian's affidavit.

City's witnesses and to present any witnesses of her own choosing. Evidentiary objections were made and ruled upon. Ms. Gilbert also had available to her and utilized the power to compel attendance of any witnesses she felt had relevant information.

Clerk's Papers, at 76.

The factors listed by the Restatement are satisfied by the Commission's procedures. Adequate notice was given all parties, as required by RCW 41.12.090. Each side called witnesses, introduced documentary evidence and cross-examined the other's witnesses, thereby satisfying the requirement of a fair opportunity to present and rebut evidence. Counsel's opening and closing statements and hearing memoranda permitted a formulation of the legal issues raised by the facts and an application of the law to those facts. There was a final adjudication on the record in the form of findings of fact and conclusions of law. Other procedural safeguards were provided in the taking of testimony on oath and the right of Shoemaker to move for reconsideration and to appeal the Commission's decision to superior court, even though he chose not to pursue the latter remedy in favor of suing in federal district court on a federal claim.

Shoemaker argues that the Bremerton Civil Service Commission has not formally promulgated procedural rules to govern the type of proceeding conducted here. Shoemaker did not raise this objection below. The court may consider matters not argued below or raised by the parties where the matter affects the right to maintain an action (*e.g.*, the contract sued upon is void), where the theories advanced by the parties ignore a mandatory statute or established precedent or where doing so is necessary to serve the ends of substantial justice or prevent the denial of fundamental rights. *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 621–23, 465 P.2d 657 (1970).

The last element of *Maynard* justifies considering the lack of written procedural rules. Collateral estoppel should not be refused on that ground. Where a city has not adopted an ordinance accomplishing the purposes of RCW

41.12, the statute itself controls. *Reynolds v. Kirkland Police Comm'n*, 62 Wn.2d 720, 728, 384 P.2d 819 (1963). This court has held that the procedural protections provided for in that chapter do meet due process. *Vancouver v. Jarvis*, 76 Wn.2d 110, 115, 455 P.2d 591 (1969). The transcripts submitted do indicate that the Commission observed a high degree of formality in its proceedings and complied with the procedural requirements of RCW 41.12-.090.

The fact that the hearing examiners were not attorneys is irrelevant. The determination at issue here is a factual determination which the commissioners were as competent as a jury to make. As for the rules of evidence not being in force, this is generally true of administrative hearings. To hold that it deprives the decision here of preclusive effect would, in effect, be to completely abolish administrative collateral estoppel. In light of the other, sufficient procedural formalities observed, we see no reason to do so.

Having determined that administrative collateral estoppel is appropriate here, we next consider the factors governing collateral estoppel generally. These also indicate that preclusion is appropriate in this case.

Certain factors in the test for collateral estoppel are clearly met. There was a final adjudication by the Commission when it issued its findings of fact and conclusions of law. The party against whom the estoppel is asserted—Shoemaker—was a party to the prior proceeding. The record shows that the matter of retaliation was actually litigated and determined. The Commission could not have reached its result without determining whether Shoemaker had prevailed in this contention.

The factual issues before the Commission and before a trial court hearing a civil rights claim are identical. The Commission found that the demotion was "not taken in retaliation for the disclosure made by Mr. Shoemaker on March 5, 1982". Clerk's Papers, at 50. Consequently, it concluded that the demotion was not handed down in bad faith and that the demotion was, as the City contended, a

valid reduction in force. The demotion was "for cause" pursuant to RCW 41.12.090.

In Shoemaker's section 1983 action, he would be required to prove that the testimony he gave concerning department irregularities was a "substantial factor" or a "motivating factor" in his demotion. *McKinley v. Eloy,* 705 F.2d 1110, 1115 (9th Cir. 1983). The Commission could not have reached the conclusion it did without finding that this was not the case, *unless* it applied a very high standard in construing RCW 41.12.090; that is, that Shoemaker's demotion was "for cause" unless a bad faith motive *predominated* in the decision. Nothing in the case law construing RCW 41.12.090 suggests that the standard for showing a bad faith demotion under section .090 is so high. The question the Commission decided was whether there was any retaliation at all; whether a bad faith motive played any substantial part in the demotion. Therefore, the issues before the Commission and the trial court—whether retaliation was a substantial motive behind Shoemaker's demotion—are identical, and collateral estoppel is appropriate.

Shoemaker argues that the Commission could not have determined the same issue as that presented in the civil rights suit because the Commission had no authority to consider the constitutionality of the City's actions. As noted above, he argues that the Commission acted beyond its competence for the same reason. These arguments confuse claim and issue preclusion. While the Commission could not have adjudicated the section 1983 claim, 28 U.S.C. § 1343, it may have decided an issue of fact that is common to both Shoemaker's petition for reinstatement before the Commission and to his section 1983 claim. If it did, and if the adjudication was adequate under the Restatement standards adopted here, then the issue has been decided for all purposes.

The fact that the issue determined is also a central element in the federal civil rights claim does not mean that giving preclusive effect to that determination is an improper application of claim preclusion or that the Com-

mission has acted beyond its competence. The cases recognize that refusing to give preclusive effect to a prior determination is justified if it will work an injustice, *Malland,* at 489, and, in the case of an agency determination, if it would contravene public policy. *Dupard,* at 275.

Shoemaker argues that the Commission's finding should not be given collateral estoppel effect as a matter of public policy because the disparity between the relief offered by the administrative agency and the federal district court would lead litigants to forgo their administrative remedies for fear of preclusion in other, more substantial claims. *See, e.g., Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279 (9th Cir. 1986). This is a persuasive argument, depending on the actual disparity.

In *Mack,* the relief at issue was unemployment compensation. Here, the Commission had the power to order reinstatement and back pay; in other words the same relief awarded as consequential damages in the federal court. RCW 41.12.090. Shoemaker also made claims for emotional distress in the civil rights suit which could not have been awarded by the Commission, but this disparity, given the uncertainty of such recovery, is not as great as the disparity of relief in *Mack.* As a result, collateral estoppel in this case does not violate public policy or work an injustice because of disparity in relief.

## CONCLUSION

We therefore answer the question certified in the affirmative. Washington law does give preclusive effect to the factual finding of the Bremerton Civil Service Commission that Joe Shoemaker's reductions in rank were not retaliatory.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.