[No. 12582-6-I.   Division One.   May 1, 1985.]

LAND CONSTRUCTION COMPANY, INC., *Appellant,* v.
SNOHOMISH COUNTY, ET AL, *Respondents.*

*Livengood, Silvernale, Carter & Tjossem* and *Jack A. Borland,* for appellant.

*Seth Dawson, Prosecuting Attorney, Edward E. Level, Deputy, Harpold & Fiori,* and *George Fiori, Jr.,* for respondents.

WILLIAMS, J.— Land Construction Company, Inc., brought this action for a declaratory judgment, injunctive relief and damages against Snohomish County, the County Executive and the county council members. Valley Cement Construction, Inc., intervened as a defendant. The trial court granted summary judgment in favor of Snohomish County and Valley Cement. Land Construction appeals.

On June 11 and 18, 1982, Snohomish County published a

call for bids on a road project, the call providing, in pertinent part:

*MBE Eligibility*

Minority and Women's Business Enterprises proposed for satisfying the MBE and WBE goals established for this project shall be listed in Washington State Department of Transportation's List of Certified Minority and Women's Business Enterprises. MBE and WBE firms that are not in said list shall not be accepted for later certification for participation in this project.

*MBE/WBE Goals*

In order to comply with the requirements of 49 CFR Part 23, goals have been established in the amount of:

a. Eight percent (8%) for Minority Business Enterprises

b. One percent (1%) for Women's Business Enterprises

The bidder shall complete a Minority Business Enterprise Certification, which has been made a part of this proposal. Snohomish County shall consider as unresponsive those bids submitted that do not contain a certification or that contain an incomplete or false certification. Snohomish County expects that the bidder shall make every effort, through negotiations and/or written solicitations commenced not less than five working days in advance of the date specified for opening of bids, to meet the above specified goals. Snohomish County expects each bidder to attain each goal.

. . .

*Selection of Successful Bidder*

The successful bidder shall be selected on the basis of his having submitted the lowest responsive bid that has met the MBE and/or WBE goal(s) as established elsewhere in these contract documents.

. . .

If the lowest bid is rejected, the next lowest bid, or bids, shall be examined under the foregoing criteria until the contract is awarded or all bids rejected.

The Minority Business Enterprise Certification, made part of Land Construction's bid, provided:

To be eligible for award of this contract, the bidder must execute and submit, as a part of his proposal, the following certification relating to minority business enterprises. This certification shall be deemed a part of

the resulting contract, therefore, a failure to complete and submit this certification or the inclusion of a false certification shall be considered as evidence that the proposal is unresponsive to the invitation to bid.

MINORITY BUSINESS ENTERPRISE CERTIFICATION

*Land Const. Co.* certifies that it has had contact with the following Minority Business Enterprises (MBE) and if it is the successful bidder on this project, it shall award subcontracts to the following Minority Business Enterprises as indicated: (If necessary, use additional sheets.)

Land Construction submitted the lowest bid, but its bid was rejected because the Women's Business Enterprise (WBE) it listed as a subcontractor was not on the Department of Transportation's List of Certified Minority and Women's Business Enterprises. Although Land Construction offered to substitute a certified WBE without increasing its bid, the county council awarded the bid to Valley Cement, the second lowest bidder.

The issue is whether Land Construction was entitled to have its bid accepted. The following principles apply:

> Although the primary purpose for the requirement of public bidding is for the protection of the general public, it is also recognized that another purpose is to provide a fair forum for those interested in undertaking public projects. If there are material irregularities in the bidding process, the municipality should not accept the offensive bid. It may, however, waive the irregularity as an informality in the bidding if the irregularity is not material. "The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Duffy v. Village of Princeton,* 240 Minn. 9, 60 N.W.2d 27, 29 (1953). *See also* Comment, *Competitive Bidding—Public Construction Contracts in the State of Washington,* 39 Wash. L. Rev. 796, 798–99 (1964).

*Gostovich v. West Richland,* 75 Wn.2d 583, 587, 452 P.2d 737 (1969). Land Construction would enjoy a "substantial advantage" over other bidders if permitted to submit the low bid with a noncertified WBE and then substitute a certified WBE after the bids are opened in that it could refuse to make such a substitution if it discovered that its bid was

too low. Because it is the acceptance, not the tender, of a bid for public work which constitutes a contract, *Mottner v. Mercer Island,* 75 Wn.2d 575, 578, 452 P.2d 750 (1969), Land Construction would have no obligation to perform under a bid containing a noncertified WBE. Before its bid is accepted, Land Construction could not be compelled to substitute a certified WBE. Snohomish County could not accept this low bid until it contained a certified WBE. If Land Construction was permitted to make this substitution after the bids are opened, control over the award of public work contracts would pass from the municipality involved to the low bidder.

Because Land Construction's bid contained a material variance from the call for bids, it was not responsive to the call for bids, and Snohomish County had "good cause" under RCW 36.32.250 to reject it.

Affirmed.

SCHOLFIELD, A.C.J., and WEBSTER, J., concur.

Review denied by Supreme Court September 6, 1985.